<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHERMAN ABRAMS, : : Plaintiff, : : v. : : PORT AUTHORITY TRANS-HUDSON : CORPORATION, et al., : : Defendants. : : | **Civil Action No. 07-4975 (SRC)** **OPINION** |

<u>**CHESLER**</u>, District Judge

 This matter comes before the Court on Defendants' June 9, 2010 motion for summary judgment on the Thirteenth Count of the Complaint [docket entry 30].  Plaintiff has opposed the motion.  The Court has opted to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons expressed below, the Court will grant Defendants' motion.  The Court will also close the action, as the remainder of the claims that were pled in the Complaint have been previously dismissed or disposed of on summary judgment.

**I.** **BACKGROUND**

 This action arises out of the termination of Plaintiff Sherman Abrams's employment with Defendant Port Authority Trans-Hudson Corporation ("PATH").  On April 29, 2005, PATH found Abrams to be medically unfit for the Trackman I position he held based on its

determination that he was physically unable to perform his job duties.  Abrams unsuccessfully

challenged that determination through a dispute resolution procedure established by the

collective bargaining agreement between PATH and his labor union.  He also filed an

unsuccessful grievance with his labor union. By letter dated August 2, 2005, PATH notified

Abrams that his employment was terminated effective on the date of his medical disqualification.

The Court more fully summarized the factual background of this case in its March 26, 2010

Opinion concerning PATH's first motion for summary judgment, and that synopsis is

incorporated here by reference.

 In the first summary judgment motion, Defendant PATH and the individual Defendants

moved for summary judgment on two of the three active claims in the case, and the motion was

granted.  Now, PATH brings this second motion for summary judgment regarding the sole

remaining claim in the case, alleging that PATH terminated Plaintiff's employment in retaliation

for exercising his First Amendment rights to free speech and to petition the government.  (This

claim is pled as the Thirteenth Count of the Complaint.)  The First Amendment retaliation claim

is directed at only two of the named Defendants, PATH and Cynthia Bacon, who is identified as

PATH's Director of Labor Relations.  The Court adds the following facts relating specifically to

Plaintiff's claim of First Amendment retaliation.

 Abrams claims that throughout his 13 years of employment with PATH, he made

numerous internal complaints and filed numerous charges with the Equal Employment

Opportunity Commission ("EEOC") concerning PATH's discrimination against him and other

employees on the basis of race and physical disability.  Abrams also asserts that he filed a

grievance with his labor union complaining of PATH's refusal to reinstate him to his Trackman I

position and attributing PATH's failure to place him in that or some other suitable employment to racial and disability-based discrimination. He claims he repeatedly expressed his views that he was treated differently than white workers, who were not terminated from physically demanding jobs or otherwise accommodated despite their disabilities.

## II.   DISCUSSION

### A.   Summary Judgment Standard

The standard upon which a court must evaluate a summary judgment motion is well-established. Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at

247-48.  The Supreme Court has held that Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  A properly supported motion for summary judgment cannot be defeated by "the mere existence of a scintilla of evidence" in favor of the non-moving party's claims.  *Anderson*, 477 U.S. at 252.  Instead, "there must be evidence on which the jury could reasonably find for the [nonmovant]."  *Id.; see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but  "must exceed the 'mere scintilla' threshold").

**B.**      **First Amendment Retaliation Claim**

Pursuant to 42 U.S.C. § 1983, an individual may seek legal redress for government actions undertaken in retaliation for the individual's exercise of his First Amendment rights.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977); *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002); *see also Bradshaw v. Twp. of Middletown*, 145 F.App'x 763, 766-67 (3d Cir. 2005) (evaluating municipal police officers' claims that their First Amendment rights were violated because they experienced retaliation for engaging in free speech).  In this case, Plaintiff asserts he engaged in two kinds of protected activity - speech and petitioning the government.

The Court first addresses the merits of the free speech claim. When a free speech retaliation claim is brought by a public employee against his employer, liability depends on a

three-step analysis.  *Feldman v. Phila. Housing Auth.*, 43 F.3d 823, 829 (3d Cir. 1994).  The

plaintiff must establish (1) that his speech constituted protected activity and (2) that it was a

substantial or motivating factor for the alleged retaliatory conduct.  *Id.*; *see also Baldassare v.

State of N.J.*, 250 F.3d 188, 194-95 (3d Cir. 2001) (holding same).  At the third step, the public

employer can avoid liability by demonstrating by a preponderance of the evidence that the same

decision would have been reached even in the absence of the protected conduct.  *Mt. Healthy*,

429 U.S. at 287; *Baldassare*, 250 F.3d at 195; *Feldman*, 43 F.3d at 829.

       The threshold question in assessing the merits of Abrams's free speech retaliation claim

is, of course, whether his alleged complaints of discrimination at PATH constitute

constitutionally protected conduct.  Whether speech is protected under the First Amendment

presents a question of law to be determined by the Court.  <u>Baldassare</u>, 250 F.3d at 195.  The First

Amendment protects speech by a government employee only when it relates to a matter of public

concern. *Connick v. Myers*, 461 U.S. 138, 146 (1983).  Speech involves a matter of public

concern if it can be "fairly considered as relating to any matter of political, social or other

concern to the community." *Id.*  Whether the public employee's speech relates to matters of

importance to the community, as opposed to those merely of personal interest, presents the

threshold issue in a First Amendment retaliation claim because "absent the most unusual

circumstances, a federal court is not the appropriate forum in which to review the wisdom of a

personnel decision taken by a public agency allegedly in reaction to the employee's behavior."

*Watters v. City of Phila.*, 55 F.3d 886, 892 (3d Cir. 1995) (quoting *Connick*, 461 U.S. at 147).

       The Court's ability to analyze the nature of the speech is, however, hampered by

Plaintiff's own failure to specify what allegedly protected statements he made or to point to those

portions of the record which might reveal the contents of the speech.  As best the Court can discern from reviewing the EEOC complaints in the record, prior to his termination Abrams made internal complaints at PATH that his employer's refusal to reinstate him to his position as Trackman I following a long medical absence or to select him for any of the seven different jobs for which he applied was based on his race (African-American).  (Resnick, Ex. 32.)  Plaintiff also points to an EEOC complaint he filed in 1998, seven years before his allegedly retaliatory termination, charging that he had been discriminated against due to his race and disability and "for speaking out against company policy."  (Resnick Cert., Ex. 4.)  Abrams argues that during his term of employment at PATH, he was outspoken about civil rights violations.  Apart from the very general and superficial descriptions of the speech Abrams claims motivated his termination by PATH, it is difficult to determine whether the speech can be considered a matter of public concern.  A public entity's engaging in race-based discrimination in its hiring and employment practices is no doubt a matter of concern to the community at large.  From the record, however, it is not clear whether Abrams's complaints of race discrimination targeted or sought to expose a policy or practice of discrimination by PATH - which would constitute a matter of public concern - or related solely to his experience in being denied the employment position(s) he desired - which would concern Abrams's private interests only.  *Connick*, 461 U.S. at 147-48 (distinguishing between matters of public concern and an employee's personal grievances); *see also Bell v. City of Phila.*, 275 F.App'x 157, (3d Cir. 2008) (affirming summary judgment on free speech retaliation claim, reasoning that plaintiff's complaints not a matter of public concern because they did not seek to expose discriminatory policies at DA's office but complained solely of employee's treatment by superiors); *Nittoli v. Morris County Bd. of Chosen Freeholders*, No.

6

05-4007 (JAG), 2007 WL 1521490, at *4 (D.N.J. May 22, 2007) (finding that though plaintiff complained of sexual discrimination, among other things, speech not protected because it concerned separate actions by the public employer involving only the plaintiff rather than pattern of harassment or discrimination); *but see Rode v. Dellarciprete*, 845 F.2d 1195, 1201-02 (3d Cir. 2008) (holding that public employee's workplace complaints related to practice of racial animus within the workplace and speech was thus a matter of public concern even though complaints were expressed as matter of employee's personal employment problems). Plaintiff argues in his opposition brief that his speech is protected because he complained of "the company policy," but, according to the record, these complaints are more ambiguous than his characterization would suggest. The only reference to Plaintiff's having complained of any policy arises in his October 1998 EEOC complaint stating that he has failed to receive promotions and was discriminated against as a result of "speaking out against company policy and certain individuals." (Resnick Cert., Ex. 4) There is no indication that the company policy to which he vocally objected had anything to do with race-based discrimination.

Assuming, to favor the non-movant here, that Abrams engaged in speech protected by the First Amendment, Defendant is nevertheless entitled to summary judgment on the free speech retaliation claim because the claim would unquestionably falter at the second and third steps of the analysis. A *prima facie* claim of First Amendment retaliation requires Plaintiff to prove that the protected conduct - here, Abrams's complaints that PATH treated him differently than white workers, who were, according to Plaintiff, returned to employment in some capacity despite a medical disability - was a substantial or motivating factor in his termination from employment. *Mt. Healthy*, 429 U.S. at 287. Defendant points to the absence of evidence that would support

7

this element, and Plaintiff, in response, comes forward with only a conclusory statement that he

has presented sufficient evidence of the causal link between Abrams's purportedly protected

speech and the termination.  Temporal proximity between the speech and the alleged retaliatory

act, for example, may indicate motivation, as may evidence of ongoing antagonism, inconsistent

explanations and the defendant's retaliatory animus in the period between the employee's

protected conduct and the retaliation.  *Ivan v. County of Middlesex*, 595 F.Supp.2d 425, 472

(D.N.J. 2009) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir.2000)).

However, in this case, Plaintiff makes no effort in his opposing brief to link the events of

protected conduct with his termination.  This rebuttal to Defendant's argument falls short of what

Rule 56(e) requires to defeat a summary judgment motion.  Additionally, as Defendant argues,

even if Plaintiff had proffered some evidence raising a question of fact as to PATH's motivation

in terminating Plaintiff - and the Court notes that he has not - there is no question that PATH

would be able to establish the affirmative defense that it would have decided to terminate

Abrams had he not engaged in the purportedly protected speech.  The Supreme Court's decision

in *Mt. Healthy* makes clear that establishing the protected speech and substantial motivating

factor prongs do not necessarily entitle a public employee plaintiff to relief.  *Mt. Healthy*, 429

U.S. at 285.  A First Amendment free speech retaliation claim can be defeated if the public

employer shows, by a preponderance of the evidence, that it would have reached the same

decision even in the absence of the protected conduct.  *Id.* at 285-86.   Indeed, *Mt. Healthy*

directs courts to examine whether the employer has rebutted the First Amendment claim by such

proof.  *Id.*  As this Court observed in its Opinion on Defendant's first motion for summary

judgment, PATH concluded that Abrams was physically unable to meet the demands of his

employment following its review of an overwhelming amount of evidence supporting that conclusion.

As the prior Opinion also observed, the Court was not and is not deciding whether that determination was correct or incorrect. The Third Circuit has made this distinction regarding what the court's role is in the analogous situation of considering an employer's motives in the context of a Title VII employment discrimination case. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997). It held that "'federal courts are not arbitral boards ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].'" *Id.* at 1109 (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996) (alteration in original). Here, the question is whether or not the real reason for Abrams's termination was his speaking out about what he perceived to be race and disability discrimination at PATH. The Court finds that as to the second and third elements of the retaliation claim, the evidence of record would not permit a jury to find in Plaintiff's favor.

The First Amendment retaliation claim based on Plaintiff's exercise of the right to petition suffers from the same fatal weaknesses. The right to petition claim is premised on Abrams's filing of a grievance with his labor union and complaints with the EEOC. These activities fall within the protection of the First Amendment's petition clause, regardless of whether they regard a matter of public concern or involve purely private interests. *San Filippo v. Bongiovanni*, 30 F.3d 424, 439-43 (3d Cir. 1997). To prevail on a right to petition retaliation claim, a plaintiff must prove, as is also required for a free speech claim, that the protected activity was a substantial factor in the alleged retaliatory conduct. *Id.* at 444. Plaintiff does not explain

9

how the evidence of record demonstrates that he was terminated in retaliation for filing these petitions. Of the three EEOC charges brought by Abrams, two post-date his termination and one pre-dates it by seven years. (Resnick Cert., Ex. 4, 32, 35.) The union grievance in the record was filed in June 2005, after PATH determined that Abrams was unfit for the Trackman I job and concluded he must be terminated from the position for medical disqualification. The governing standard requires that Plaintiff prove that the protected activity was a "substantial" factor in the termination, and he has not demonstrated that he could potentially meet that standard. Even if Plaintiff could arguably meet such a burden, the claim should not go to a jury because the evidence is clear that PATH would have terminated Plaintiff regardless of the petitions. Because Abrams is a public employee suing his employer for First Amendment retaliation, the right to petition claim is subject to the three-part analysis articulated in *Mt. Healthy* and may thus be defeated if the public employer can demonstrate that it would have taken the same action in the absence of the protected conduct. *Mt. Healthy*, 429 U.S. at 287; *San Filippo*, 30 F.3d at 430-31. As the prior Opinion discussed, Abrams's physical condition and illness caused him to take prolonged absences from work, including 23 weeks of absence over the course of 2004 and continuously from January 7, 2005 until the date of his termination. On those undisputed facts, Plaintiff cannot prevail on his petition-based retaliation claim as a matter of law.

Additionally, apart from the foregoing deficiencies, the First Amendment claims lack merit as a matter of law because Plaintiff has come forward with no evidence that would establish municipal liability against PATH under the standard established by *Monell*. PATH is "a municipal instrumentality of New York and New Jersey created by a compact between these two states with the consent of Congress." *Mineo v. Port Auth. of N.Y. & N. J.*, 779

10

F.2d 939, 940 (3d Cir.1985).  To establish section 1983 liability against a governmental entity, such as PATH, a plaintiff must demonstrate that his alleged deprivation of rights occurred as a result of a custom or policy of the entity.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, 694 (1978); *Simmons v. City of Phila.*, 947 F.2d 1042, 1064 (3d Cir.1991), *cert. denied*, 503 U.S. 985 (1992).  Plaintiff has proffered no evidence at all that PATH officials made a deliberate choice to engage in a practice of terminating or otherwise retaliating against employees who expressed their views on matters of public concern, complained about discriminatory treatment on the job or filed petitions for legal or administrative redress of their rights.  *Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986).


**III.    CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion, ordering summary judgment in their favor on the First Amendment retaliation claim pled in the Thirteenth Count of the Complaint.  An appropriate form of Order will be filed.


  s/Stanley R. Chesler  
STANLEY R. CHESLER  
United States District Judge

DATED: September 23, 2010